**BOARD OF EDUCATION OF BOWLING GREEN SCHOOL DISTRICT R–I,** Respondent,

v.

**Harry H. HARNESS and Myrta E. Harness,** Appellants.

No. 47835.

Supreme Court of Missouri,

Division No. 2.

Sept. 12, 1960.

Motion for Rehearing or for Transfer to Court en Banc Denied Oct. 10, 1960.

this tract of land and to the sale of every piece of real estate in the vicinity of Bowling Green over a period of years. Subdividers platted hypothetical subdivisions and in view of population trends and other data attributed a potential value of $48,000 to the 16 acres. Mr. Harness valued his land at $32,000 and other witnesses attributed values and a loss of $28,000, $37,000, $24,000 and $32,000. Witnesses for the school district placed these values on the 16 acres: $6,400, $9,600, $8,500, $6,624 and $10,240. In so far as this appeal is concerned these are the most important facts: In 1926 Mr. Harness bought a farm adjacent to but outside the city limits of Bowling Green. The farm consisted of 300 acres and the purchase price was $25,000. In 1931 U. S. Highway 61 was constructed across the northeast corner of the farm severing or separating this triangular-shaped 16 acres from the rest of the farm.

A landowners' witness, with dubious qualifications as an expert, attributed a value of $2,000 an acre to the appropriated tract. During his cross-examination there was this brief colloquy: The witness conceded that most of his experience had been with farm land and then counsel put this question: " * * * did you ever hear of any farm land in Pike County, Missouri, of more than 10 acres selling for $2,000.00 an acre? A. Yes, Sir." Landowners' counsel then made an objection, the gist of which was that the cross-examination should be limited to "testing this witness' knowledge of values. * * * There's no evidence of the value of the land in question" (meaning at this point in the trial). The court asked the reporter to read the last question and after it had been read the court said, "Well, this is farm land." The district's counsel agreed with the court, the court overruled the objection and this time the witness answered that he had not heard of any farm land selling for $2,000 an acre. The jury was excluded and counsel moved for a mistrial because "of the highly prejudicial remark of the Court, * * *. We feel that the remark of the

John M. McIlroy, James Millan, Bowling Green, for respondent.

Paul E. Williams, Bowling Green, F. D. Wilkins, Louisiana, for appellant.

BARRETT, Commissioner.

The Bowling Green school district condemned 16 acres of land and the landowners, Mr. and Mrs. Harness, have appealed from an award of $10,400 compensation.

This is a typical condemnation proceeding and it is not necessary to detail the testimony of the more than twenty witnesses. Real estate dealers from far and near as well as others professing to have some knowledge testified to the value of

Court is so highly prejudicial that no amount of admonition will take from their minds the prejudice created thereby." The court observed that "the sole testimony to this date, to be to that effect. That it was unimproved farm land" and denied the request for a mistrial.

■ It is now contended that the court's remark was a "comment on the evidence," indicated the "court's personal prejudice" and deprived the landowners of a fair trial because the most important ultimate fact to be determined "was the character and suitability of the subject land for urban development. * * * whether the subject land was farm land or development property." The landowners claimed that the best use of the 16 acres was for urban development and expert witnesses projected a possible subdivision into town lots and eventually a very profitable venture of $48,000. And, the value of condemned land is not to be estimated simply with reference to the condition in which the owner has maintained it, the jury may take into consideration "all uses for which the condemnee's property is suitable and adaptable," including its adaptability for building lots. 29 C.J.S. Eminent Domain § 160, p. 1027; Empire District Electric Co. v. Johnston, 241 Mo.App. 759, 765–766, 268 S.W.2d 78, 82. But possible use or adaptability is but one illustrative circumstance, as the jury was instructed the problem was one of "just compensation," the fair market value of the entire tract. As indicated, the 16 acres was unimproved, it had not been subdivided or platted and although separated from the rest of the farm by the highway it had been farmed over the years and on the date of the trial was planted in Korean clover. But aside from the adaptability of the land to other uses, the court's remark was made in the course of ruling on an objection (88 C.J.S. Trial § 50(a), p. 132) and in the context of the trial it is not believed that the isolated statement was an expression of opinion upon the essential trial issue or that it indicated bias on the part of the court or in the circumstances

that it deprived the landowners of a fair trial. Goyette v. St. Louis-S. F. Ry. Co., Mo., 37 S.W.2d 552, 555; A. P. Nolan Grading & Const. Co. v. Schilling, Mo.App., 293 S.W. 79.

The appellant landowners urge that the court erred in giving instructions A and B and in refusing to give offered instruction 8 and that therefore they are entitled to a new trial. Among other things it is said that instruction 8 is a converse to instructions A and B, that it correctly declares the law "applicable to the evidence," that no other instruction adequately defines "just compensation" and that certain features of the instruction were not fully embraced in other instructions. As to instructions A and B it is said that they were "cautionary in nature," tended to over-emphasize condemner's position and as to instruction A there is the very technical and difficult to follow objection (Siemers v. St. Louis Elec. Ter. Ry. Co., 348 Mo. 682, 694–695, 155 S.W.2d 130, 137): "This instruction was cautionary in nature and instructed the jury as to several measures of value which were *not* to be used and joined each of the measures by the use of the conjunction 'nor' except the last improper measure which was improperly joined by the use of the word 'or' and by such word raised a question rather than made a further statement, all of which tended to mislead and confuse the jury."

In the first place there were no instructions hypothesizing any particular evidence or facts and directing a verdict as is usually the case, for example in a negligence action. Instruction 1, given at the request of the landowners, is what one might call the principal instruction and it began by telling the jury that the school district "has actually appropriated and taken from the defendants sixteen acres of land described in the evidence," that under the constitution private property could not be taken for public use without just compensation being paid to the owner and consequently "It is, your duty therefore under the law, to assess just compensation to be

paid to said defendant owners." "Just compensation" was then defined as the fair market value of the whole tract and that was followed by a conventional definition of "fair market value." Instruction 2, also given at the request of the landowners, told the jury that they could take into consideration the location of the land, the uses and purposes for which it was suitable or adaptable, the sales of other property and all the circumstances shown by the evidence.

 The appellants' objections to given instructions or claim of error in the refusal of instructions may not be considered apart from the other given instructions and the substance of instructions 1 and 2 is noted for two additional purposes: (1) as the landowners state, instructions A and B, given at the request of the district, were "cautionary in nature" and both expounded abstractly upon the subject of "market value," what it was and what it was not, and (2) refused instruction 8 in part set forth in a little different form the same matters contained in instruction 1, as to appropriation of private property and the duty of the jury to assess "just compensation," and this instruction again defined "just compensation" and "fair market value." While the order of the instructions in this proceeding to assess damages is unusual, the principal instruction being the defendants', it is not readily apparent that instruction 8 is in fact a converse of instructions A and B, if anything instructions A and B are the converse of instructions 1 and 2. This is not to say that it is either necessary or desirable but neither instruction 8 nor A and B hypothesized evidentiary detail, they were all concerned with general abstractions. Compare State ex rel. State Highway Comm. v. Volz Concrete Materials Co., Mo., 330 S.W.2d 870. It appears that two sentences in instruction 8 were excerpted from instructions 1 and 3 in Metropolitan Street Ry. Co. v. Walsh, 197 Mo. 392, 94 S.W. 860, but as indicated "just compensation" and "fair market value" were adequately defined in instruction 1. Not only was the essence of instruction 8 embodied in instruction 1, there is no conflict in the instructions and read together they generally and abstractly presented the essential issue. City of Cape Girardeau v. Hunze, 314 Mo. 438, 284 S.W. 471, 47 A.L.R. 25; State ex rel. State Highway Commission v. Bailey, 234 Mo. App. 168, 115 S.W.2d 17. Instructions A and B did not direct a verdict, they were cautionary as well as explanatory and abstract. Mayor, Etc., of City of Liberty v. Boggess, Mo., 321 S.W.2d 677, 683. And finally, as to all of the assignments with respect to the giving and refusal of instructions, it is not apparent or demonstrable that any of the instructions were misleading or confusing or manifestly erroneous in a manner "materially affecting the merits of the action." V.A.M.S., Sec. 512.160, subd. 2; Gary v. Averill, 321 Mo. 840, 12 S.W.2d 747; State ex rel. State Highway Commission v. Haid, 332 Mo. 606, 610, 59 S.W.2d 1057, 1058.

 Finally it is urged that the verdict was "so grossly inadequate for the land taken as to be the obvious result of passion and prejudice and was not responsive to any of the evidence and was grossly less than indicated by any credible evidence." An award of damages or compensation in a condemnation proceeding may be set aside for inadequacy if the record "demonstrate(s) the truth of the fact that the award of the commissioners (sic) is inadequate, not alone on the ground of a preponderance of adverse testimony, but *because there is no substantial evidence to sustain it*." (Italics supplied.) City of St. Louis v. Smith, 325 Mo. 471, 478, 30 S.W.2d 729, 732. Here the award of the jury is inadequate only in the light of the landowners' evidence, under the condemner's evidence the jury's verdict is substantially supported. As far as the court knows it was a mere coincidence that the $10,400 verdict of the jury coincided to the penny with the commissioners' award, one of the condemner's witnesses attributed a value of $640 an acre or $10,240. It is not neces-

**812**

sary to detail the evidence or again enumerate and contrast the various estimates of value, the evidence of the parties was in direct conflict and in these circumstances this court may not interfere with the jury's primary function of awarding just compensation. Empire District Electric Co. v. Johnston, supra; State ex rel. Chariton River Dr. Dist. v. Montgomery, Mo., 275 S.W.2d 283, 287; School District of Clayton v. Kelsey, 355 Mo. 478, 486, 196 S.W.2d 860, 864.

The judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

LEEDY, P. J., EAGER and STORCKMAN, JJ., and HUNTER, Special Judge, concur.