**STATE of Missouri, ex rel. STATE HIGH-WAY COMMISSION of Missouri, Plaintiff-Respondent,**

**v.**

**COMMONWEALTH DRIVE-IN THEATRES, INC., et al. (Exceptions of Jesse Lester Roberts and Edna M. Roberts), Defendants-Appellants.**

**No. 24646.**

Kansas City Court of Appeals.

Missouri.

Oct. 2, 1967.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 4, 1967.

Application for Transfer Denied Feb. 12, 1968.

Charles W. Hess and Charles White Hess, Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, for appellants.

Robert L. Hyder, Jefferson City, Earl H. Schrader, Jr., Tom J. Helms, Kansas City, for respondent.

CROSS, Judge.

By this action in condemnation the State Highway Commission appropriated 4.11 acres of land from a tract containing approximately 19 acres, owned by defendants Jesse Lester Roberts and Edna M. Roberts, as right of way for relocation of U.S. Highway 71. The commissioners appointed by the circuit court awarded defendant landowners $2,000.00 as their compensation. Both plaintiff and defendants filed exceptions to the award. A jury trial resulted in a verdict and judgment in favor of defendants in the amount of $3,375.00. Thereafter defendants filed a motion to set aside the judgment and to render judgment in their favor in an increased amount, notwithstanding the verdict; and, in the alternative, for a new trial. As supporting grounds defendants alleged that under undisputed evidence they were entitled to a verdict and judgment in an amount not less than $5,955.-00. The motion was denied and this appeal by defendants followed.

Defendants brief contains two appeal points commonly devoted to a contention that the verdict and judgment in the amount of $3,375.00 are not responsive to the evidence. It is defendants' position that they were entitled to a verdict and judgment based on two separate items or factors of damage, to-wit: (1) the value of the 4.11 acres (the difference in market value of the entire tract before and after the appropriation), and (2) a sum representing the cost of "removing" certain growing walnut trees pursuant to an alleged "agreement" between the parties conferring upon defendants the right to retain title to and remove the trees from the appropriated lands. Defendants argue that undisputed evidence has established that they are entitled to (1) a minimum of $1,955.00 for their land taken, and (2) the additional sum of $4,000.00 as and for the cost of removing the trees.

Therefore, say defendants, they are minimally entitled to an award of damages in the sum of $5,955.00, for which this court should give them judgment or direct the trial court to do so; or, in the alternative, that they should be granted a new trial.

Plaintiff's petition is in conventional form and contains the following quoted provision, which primarily gave rise to the present controversy:

"(Par.) 40. Relator has no need or use for any fence, crop, building, structure or other things which can be removed from the land being condemned; and, if any such objects are of any value to the respective defendants, said defendants may retain title thereto and remove them if, (1) they shall have filed their written election so to do prior to the commissioners' appraisal of the property, and (2) the removal is completed not later than 20 days after such future date or event as shall be specified in a written notice from Relator's District Engineer and served on any occupant of, or defendant claiming an interest in the particular tract of land, after payment into court of any commissioners' award."

No written election to retain title to and remove the trees was ever filed by defendants, nor did they respond otherwise to paragraph 40 above quoted. The trees were not removed by defendants, but were bulldozed from the land by plaintiff after taking possession of it.

Defendant Jesse L. Roberts testified that since 1942 he and his wife had owned the tract of land in question and that he had operated a nursery upon it. The land condemned consists of 4.11 acres which was separated from the main portion of the tract by the Frisco railroad tracks. Prior to the taking there were ten to twelve large walnut trees and a number of walnut seedlings located on the 4.11 acre tract, estimated altogether as approximately one hundred trees. In the course of direct examination, Mr. Roberts was asked to state, in his opinion as a nursery man, "What would

be the value of the trees on the triangle taken as of April of 1961?" Plaintiff's counsel objected to any expression on the part of Mr. Roberts, or any other witness, as to the value of the walnut trees, on the ground that paragraph 40 of the plaintiff's petition gave defendants the right to remove the walnut trees. The trial court sustained the objection and further ruled that evidence would be permitted to show "what it would cost to move the trees." Whereupon defendants' counsel stated: "I will withdraw that last question," and proceeded to inquire of the witness what it would have cost him "to have moved those trees off that triangle (the 4.11 acres) before the highway department came in there?". Answering the question, Mr. Roberts stated "approximately $4000.00." However, he admitted that he had not removed the trees, with the explanation that he had not had time to do so. Mr. Roberts expressed the opinion that the entire tract was worth approximately $225,000.00 before the taking and that "the value of the tract after the state highway took away one side of your railroad and the 4.11 acres and the walnut trees" was $200,000.00, making a difference in the before and after value of "approximately $25,000.00." The remainder of Mr. Roberts' testimony principally related to the question whether the condemned property should be valued as for commercial and industrial use or as agricultural lands. David Childs and R. D. Groves were produced by defendants as witnesses qualified to testify on real estate values. Mr. Childs testified that the difference in the value of defendants' land before and after appropriation was $10,275.00 plus any crop of walnut trees "not counting any damage for having to remove any walnut trees." Mr. Groves testified that the before and after value differential was $10,900.00 not taking into account "any damage for having to remove the walnut trees or any damages in regard to the walnut trees."

Plaintiff produced two witnesses qualified to express opinions on land value. Clark T. Reid testified that defendants'

entitlement to compensation for the 4.11 acres actually taken was $2,055.00. He gave no "valuation to the cost to remove the walnut trees" and placed no value upon them, stating that he "did not figure that there was any substantial value in those walnut trees as an extra value." Plaintiff's witness Tom Vanderpool expressed the $1,955.00 figure (heretofore mentioned) as representing the difference in the before and after value of the 4.11 acres.

■ In support of their claim of entitlement to an award of compensation for the cost of removing the trees in question, defendants argue that an agreement to that effect arose from paragraph 40 of plaintiff's petition. There is no foundation of law or fact to support this theory. It is manifest from the language of paragraph 40 that it constitutes merely a tentative offer extending defendants an opportunity to enter into a binding agreement with plaintiff which would have given them the right to remove the trees. Both the offer and the right to remove the property in question were conditioned upon the fulfillment of two separate obligations imposed by the terms of plaintiff's pleading. First, it was necessary that defendants file an election in writing, in prescribed terms, in order to "retain title thereto (the trees) and remove them." Second, defendants were required to have completed removal of the trees within the prescribed time. Since defendants are in default of both conditions it is idle to assert that any agreement was consummated between the parties. The suggestion that defendants are entitled to be paid the cost of removing trees which in fact were never removed, and thus be reimbursed for expenses never incurred, is not consistent with reality or reason. State ex rel. State Highway Commission of Mo. v. Haid, 332 Mo. 606, 59 S.W.2d 1057, cited by defendants, is not authority for the proposition.

Defendants also say "said agreement" was evidenced by the trial court's action in

receiving evidence to show an estimated cost of removing the trees, which amounted to a determination that "an agreement controlled the element of damages—based on the cost of removal of the walnut trees." We can not accept this premise. Whatever reason may have induced the court to admit the testimony of Mr. Roberts that it would cost $4,000.00 to remove the trees, such action could not in any manner or degree affect the rights of the parties or amount to a determination that a contract existed between them when the facts are conclusive otherwise. For that matter, it is apparent that the trial court's view that the cost of removing the trees should be included in the measure of damages was temporary only, and that later in the trial the court abandoned that view and recognized the proper measure to be applied under the facts in this case. This is evidenced by the court's submission of the damage issue to the jury by Instruction No. 4, patterned from MAI 9.02, which told the jury they must award defendant "the difference between the fair market value of defendant's whole property immediately before the taking on April 7, 1961, and the value of defendants' remaining property, immediately after such taking."[1]

It also appears that defendants abandoned the cost of removal theory even before the conclusion of Mr. Roberts' testimony on direct examination. After defendants' counsel had withdrawn the question as to "the value of the trees on the triangle,"

he asked the following questions of Mr. Roberts and elicited the following answers:

"Q. Do you have an opinion of what your entire tract was worth on April 7, 1961 before the taking?

A. Approximately two hundred and twenty-five thousand.

Q. And what, in your opinion, was the value of the tract after the state highway took away one side of your railroad and the 4.11 acres *and the walnut trees?*

A. Two hundred thousand.

Q. (By Mr. Hess) Then you feel the difference from the two, the before and after value, was approximately twenty-five thousand dollars?

A. Yes, sir, I do." (Emphasis supplied.)

It is significant that the foregoing testimony does not relate to the cost of removal of the trees but instead to their value *in place*. It was elicited by defendants' counsel in conformity with the correct and approved measure of damages to be applied, and reflects understanding and acquiescence on the part of the defendants that the case would be submitted on the basis of the difference between the fair market value of the property as a whole, *including the walnut trees,* immediately before and immediately after the appropriation. At that point of the trial defendants had placed before the jury evidence on two inconsistent theories of recovery for damages resulting

---

1. See State ex rel. State Highway Commission v. Kendrick, Mo.Sup., 383 S.W. 2d 740 where the Supreme Court held that the difference in the fair market value of the whole tract immediately before and immediately after the appropriation of a portion thereof is a proper rule for ascertaining the damages where a part of a tract of land is condemned. Citing Kamo Electric Cooperative v. Baker, 365 Mo. 814, 287 S.W.2d 858; Mo. Digest, Eminent Domain, ⊂⟩136, 138. The Kendrick opinion states that the same result may be reached in another

way, i. e., "by awarding the landowner the market value of the land actually taken, plus the consequential damage, if any, to the remainder of the land of which that taken formed a part, caused by the taking, City of St. Louis v. Vasquez, Mo.Sup., 341 S.W.2d 839, and cases cited, l.c. 846(11), less the special benefits, if any, accruing in consequence of the making of the improvement. State ex rel. State Highway Commission [of Mo.] v. Craighead, Mo.App., 65 S.W.2d 145, 148."

from loss of the trees: (1) the cost of removing them and (2) their value in place as augmenting the value of the entire property. It is not arguable that defendants were entitled to a recovery on the basis of both theories. Of necessity they were put to the election of one or the other in submitting their case. Obviously they were satisfied to go to the jury on the before and after theory and not the cost of removal postulate, inasmuch as they clearly acquiesced in the giving of Instruction No. 4, which hypothesized the before and after theory as the measure of their damages. Insofar as the record discloses, they made no objection to it, offered no special or qualifying instruction and made no objection to any other instruction given by the court. In closing arguments defendants' counsel made no reference to the subject of tree removal or to Mr. Roberts' estimate that tree removal cost would approximate $4,000.00. Defendants offered no complaint of any of the instructions in their motion for new trial and none has been raised in this appeal.

There is no merit in defendants' assignments of error. The recovery in this case must be and is limited to the measure of damages as it was defined and submitted to the jury by Instruction No. 4. The verdict and judgment are responsive thereto and we specifically find that they are supported by the evidence. In reaching this conclusion we have duly considered all authority brought to our attention by defendants, but we find nothing therein to contradict the views we have expressed.

 In arguing the two points presented in their brief defendants obliquely suggest: "If this Court were to conclude that there was not an agreement between the parties affecting the element of damage on the cost of removal of the walnut trees, then the trial court erred in excluding the testimony as to the value of the trees offered by landowner, and a new trial would be necessary." This suggestion of error is not properly before us. It has not been preserved for review for the following reasons: (1) Any cause for complaint of the trial court's action in excluding the testimony proffered was extinguished by withdrawal of the question which sought to elicit the testimony. (2) No allegation of error in respect thereto was presented to the trial court in defendants' motion for a new trial as required by Civil Rule 79.03 in order to preserve the question for appellate review. (3) Defendants' brief contains no point wherein they complain that error was committed by the trial court in excluding the testimony in question showing "what actions or rulings of the Court are sought to be reviewed and wherein and why they are claimed to be erroneous, with citation of authorities thereunder;" Civil Rule 83.05.

The judgment is affirmed.

All concur.